UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 16 Cr. 848 (KPF) |
| RASHEEN AMARO, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Rasheen Amaro is currently serving a 40-month term of imprisonment at the Low Security Facility at FCI Fort Dix ("Fort Dix"). Two months ago, the Court received a counseled request from Mr. Amaro that the Court recommend to the Bureau of Prisons (the "BOP") that he "be released to home confinement to complete the last seven months of his 40-month sentence, pursuant to 18 U.S.C. § 3624(c), as amended by Section 12003(b)(2) of the Coronavirus Aid Relief and Economic Security (CARES) Act." (Dkt. #38). After soliciting input from the Government and the Probation Department, the Court issued an order granting that request. (Dkt. #40). Thereafter, while his request to the BOP was pending, Mr. Amaro moved for the Court to reduce his sentence pursuant to the compassionate release provision, 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. #43). For the reasons set forth in the remainder of this Order, the Court now grants the motion and orders his release from custody within 24 hours of the date of this Order, pursuant to the conditions outlined herein.

## BACKGROUND

Mr. Amaro was charged in a sealed complaint dated October 4, 2016, with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2, and receipt and distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (b)(1), and 2.  (Dkt. #1).  Mr. Amaro subsequently waived indictment and consented to the filing of an information charging him with these offenses on December 15, 2016.  (Dkt. #10).  The underlying offense conduct was indisputably egregious, and for this reason is presented in summary form:  Mr. Amaro, using the *nom de plume* "MisfitMunster," sent, received, and encouraged others to share child pornography through the mobile application Kik Messenger.   (*See* Final Presentence Investigation Report ("PSR") ¶¶ 13-24).

Mr. Amaro pleaded guilty to Count One of the Information on June 14, 2017, pursuant to a plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 87 to 108 months' imprisonment.  (Dkt. #23 (transcript)).  In so doing, Mr. Amaro avoided a potential mandatory minimum term of five years' imprisonment under Count Two.  Sentencing was held on December 4, 2017.  (Dkt. #32 (judgment), 33 (transcript)).  At sentencing, the Court varied downward substantially to a term of 40 months imprisonment, thereby balancing the gravity of the conduct and the impact on the victims with Mr. Amaro's documented history of abuse and mental health issues.  (Dkt. #33 at 53-55).

As a consequence of the COVID-19 pandemic, Mr. Amaro has pursued release to home confinement on two tracks: with the BOP pursuant to 18 U.S.C. § 3624(c), and with the BOP and this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Court understands that the BOP has denied the § 3624(c) request (Dkt. #46), and that Mr. Amaro has exhausted his administrative requirements under § 3582(c)(1)(A)(i).  In brief, Mr. Amaro seeks immediate release from custody to begin serving his term of supervised release, citing (i) the comparatively short period of time remaining on his sentence (less than five months as of the date of this Order); (ii) ███████████████ ████████████████████████████████████████████████████ ██████████████; and (iii) his detailed plan of reentry, which includes living with his family.  (Dkt. #43; *see also* Dkt. #49 (defense reply brief)).  The Government opposes the motion, focusing in particular on the disquieting specifics of Mr. Amaro's offense conduct and the fact that the sentence imposed already reflected a substantial downward variance from the Guidelines.  (Dkt. #47).  In response to an order from the Court (Dkt. #51), the parties have submitted supplemental letter briefs concerning mental health and/or sex offender-specific treatment Mr. Amaro received while incarcerated at Fort Dix (*see, e.g.*, Dkt. #52).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).  "The defendant has the burden to show he is entitled to a sentence reduction."  *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia,*

4

when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons."  U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D).  Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP.  *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020).  In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Amaro's motion is properly before the Court because more than 30 days have elapsed since the date of his compassionate release request to the Warden.  The issue at hand is whether Mr. Amaro has identified "extraordinary and compelling reasons" warranting his release, and whether such release would comport with the factors set forth in 18 U.S.C. § 3553(a).  Although it is a close call, the Court concludes in the affirmative on both issues.

To begin, Mr. Amaro argues that the conditions of his incarceration at Fort Dix place him at a higher risk of contracting COVID-19, because of the nature of his confinement at the facility, his medical and mental health

conditions, and the claimed inability of prison staff to handle the outbreak.
The Court recognizes, as do the parties, that sister courts in this District have
granted, and denied, compassionate release motions based on the existence of
the COVID-19 pandemic and the risks of its transmission at prisons.  (*See, e.g.*,
Dkt. #43 at 5-6, 9-10, 13-16 (defense discussion of cases granting
compassionate release applications); Dkt. #47 at 9 (Government discussion of
cases denying compassionate release applications)).  This Court aligns itself
with those courts that have found "that the risks posed by the pandemic alone
do not constitute extraordinary and compelling reasons for release, absent
additional factors such as advanced age or *serious underlying health conditions*
that place a defendant at greater risk of negative complications from the
disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at
*1-2 (S.D.N.Y. May 14, 2020) (emphasis added) (collecting cases); *see also*
*United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3
(S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the
COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the
'unique circumstances' and 'context' of each individual defendant.  In practice,
courts in this district have considered the age of the prisoner; the severity and
documented history of the defendant's health conditions, as well as the
defendant's history of managing those conditions in prison; the proliferation
and status of infections in the prison facility; the proportion of the term of
incarceration that has been served by the prisoner; and the sentencing factors
in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the

offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

The Court has reviewed Mr. Amaro's medical and mental health records, and has considered the position articulated by the BOP when it denied Mr. Amaro's earlier release request:



Inmate Amaro is a 32-year-old male

(Dkt. #46 at 5 (emphasis added)).  *See also* CENTERS FOR DISEASE CONTROL AND PREVENTION, Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html

) (accessed July 11, 2020).

The Court has also considered the spread of COVID-19 at Fort Dix. According to the BOP website, there are currently 15 inmates and 0 staff members who currently test positive for the virus, as compared with 25 inmates and 5 staff members who have recovered from it. *See* https://www.bop.gov/coronavirus/ (accessed July 14, 2020).[1] While the number of positive-testing inmates is not as high as certain other BOP facilities, such as FCI Elkton and FMC Butner, it remains a source of concern for the Court.

Were it just a question of the BOP's ability to address Mr. Amaro's medical issues, the Court might feel comfortable letting Mr. Amaro remain at Fort Dix. But there is more — specifically, Mr. Amaro's lengthy history of mental health issues, which, in the Court's estimation, are not being adequately addressed at this stage of his incarceration. To be sure, Mr. Amaro has met periodically with a psychiatrist at Fort Dix (although, as the defense notes, such meetings appear to concern medication management); he has met several times with a staff psychologist; and he has been prescribed a variety of medications for his mental health issues. (Dkt. #52). However, the Court recently learned that Mr. Amaro was placed on suicide watch for several days in December 2019. More troublingly, Fort Dix does not currently offer, and

---

[1]     Fort Dix has an adjacent minimum security satellite camp. The Government has notified the Court that no general population inmate has tested positive for COVID-19 at the Low Security Facility, but that on July 2, 2020, a special housing unit inmate at the Low Security Facility did test positive. While the number of positive cases at the Low Security Facility remains low, there have been 58 inmates at the Fort Dix satellite camp who have tested positive for COVID-19, and the camp has been off quarantine status since May 21, 2020.

thus Mr. Amaro has not received, sex offender treatment.  Ultimately, the Court finds that the COVID-19 pandemic, Mr. Amaro's significant co-morbidities, and his deep-seated mental health issues, taken together, constitute extraordinary and compelling reasons for his release from custody.

The Court has also considered whether granting the request for compassionate release would comport with the § 3553(a) factors or, conversely, whether a grant would undermine the purposes of sentencing.  As the Government notes, Mr. Amaro was no accidental or passive recipient of child pornography, but rather was a "prolific distributor" who seemed to have "an insider knowledge of child pornography that is accessible on the dark web," and who "instructed other users to distribute child pornography in order to stay in the chat group."  (Dkt. #47 at 2).  The Court is appropriately concerned with whether Mr. Amaro would pose a danger to the community if released.  But all of that said, the Court is more concerned that, given the constellation of restrictions at Fort Dix occasioned by the pandemic, requiring Mr. Amaro to serve out the remaining few months of his sentence at Fort Dix will actually result in diminishing returns to him and to society as a whole.  *See United States* v. *Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *4 (S.D.N.Y. Apr. 9, 2020) (granting unopposed motion for compassionate release where, among other reasons, the defendant's "remaining term of incarceration is short").  The Court recalls that Mr. Amaro was compliant with the terms of his pretrial release for the 16 months of its duration, and is pleased to learn that Mr. Amaro has received no disciplinary infractions while incarcerated.  (Dkt.

#43 at 2).  The Court also agrees with Mr. Amaro and his able counsel that the best course of action, in order to preserve the gains that Mr. Amaro has made while incarcerated, is to grant the motion for compassionate release and allow Mr. Amaro to begin serving his term of supervised release now, so that he can reside with his family and obtain much-needed mental health and sex offender treatment as soon as is practicable.

To borrow a phrase often used in the political sphere, the Court wishes to "trust, but verify."  Accordingly, it adopts several of the conditions set by Judge Cathy Seibel in *United States* v. *Pagliuca*, No. 17 Cr. 432 (CS) (S.D.N.Y. May 18, 2020).  The Court GRANTS Mr. Amaro's motion for compassionate release and reduces his term of imprisonment to that of time served.  The Court orders the BOP to release Mr. Amaro within 24 hours of the date of this Order on the following conditions, which are special conditions of supervised release additional to those previously imposed:

1.     Mr. Amaro shall be subject to home incarceration, to be enforced by GPS monitoring, at the residence on East 183rd Street in the Bronx, New York, at which he resided prior to his arrest (the "Residence"), until his originally scheduled BOP release date of December 10, 2020.  Installation of GPS monitoring will take place after a 14-day quarantine period (described in paragraph 2 below) has been completed.  During the period of home incarceration, Mr. Amaro must remain at his approved residence except as necessary for medical treatment, which requires prior notice to and approval

10

by the Probation Department unless it involves a true emergency, and except as necessary to obtain essentials, which requires prior notice to and approval by the Probation Department.

2.  In light of the COVID-19 pandemic, Mr. Amaro upon release must self-quarantine at the Residence for 14 days, except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency.

3.  Mr. Amaro shall arrange with relatives to provide essentials during this 14-day period, and only if that is impossible, he shall request permission from the Probation Department to obtain essentials on his own, which he shall not do without the Probation Department's approval.

4.  Mr. Amaro is to possess or have access to a phone that will allow video conferencing by the Probation Department.  This phone will be monitored by the Probation Department per the special condition previously imposed.

5.  Mr. Amaro is not to have direct or indirect contact with any relative who he knows or should know does not welcome the contact or, with respect to children under 18, whose parent or guardian does not approve of the contact.

6.  During the period of home incarceration, Mr. Amaro shall commence treatment services as ordered in the December 4, 2017 Judgment.

7.      Mr. Amaro shall contact Supervisory U.S. Probation Office

Shawnte Lorick (646-210-2479) upon his release.[2]

SO ORDERED.

Dated:      July 14, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[2]      The Court is imposing the first condition to impose just punishment, avoid
unwarranted disparities, and recognize the seriousness of the offense.  The remaining
conditions are imposed to allow proper supervision by the Probation Department.